# The United States District Court For
# The Northern District of Oklahoma

FILED
SEP 2 7 2002
Phil Lombardi, Clerk
U.S. DISTRICT COURT

Jeffrey Scott Wolfe, )
Plaintiff, )
)
vs. )
)
Jo Anne B. Barnhart, Commissioner )
of the Social Security Administration ) Case No. 02CV 749K (C)
and )
Amy L. Comstock, Director, Office )
of Government Ethics, )
Defendants. )

## Complaint

I. Introduction

The Plaintiff, JEFFREY SCOTT WOLFE, (hereinafter "Plaintiff") for his complaint against the Defendants and each of them states as follows:

1. The Plaintiff serves as a federal Administrative Law Judge, appointed October 15, 1995 in accord with the Administrative Procedure Act, 5 U.S.C. § 3105, serving with the Office of Hearings and Appeals, Social Security Administration and assigned to the Tulsa, Oklahoma Office of Hearings and Appeals.

2. Defendant JO ANNE B. BARNHART is the Commissioner of the SOCIAL SECURITY ADMINISTRATION (hereinafter, "SSA"), an executive branch

department of the federal government and as such is the Head of the Agency; and in such capacity is vested with final decision making authority as regards application of the Ethics in Government Act of 1978 and the Ethics Reform Act of 1989 (hereinafter "the Ethics in Government Act") found at 5 U.S.C. §501 *et seq.* (*See*, 5 *C.F.R. §2636.201 et seq.*)

3. Defendant AMY L. COMSTOCK is the DIRECTOR of the OFFICE OF GOVERNMENT ETHICS (hereinafter,"OGE") and as such is vested with final authority to implement and interpret the rules promulgated by OGE in accord with the Ethics in Government Act (See, 5 U.S.C. §503(2)).

4. A genuine controversy and dispute exists between the Plaintiff and Defendants as follows:

a. Plaintiff, in his capacity as a federal Administrative Law Judge, is governed by the provisions of the Ethics in Government Act and its implementing regulations; and specifically that regulation which prohibits receipt of compensation from any source other than the federal government for teaching, speaking or writing that relates to his official duties (found at 5 C.F.R. §2635.807(a), hereinafter "the rules").

b. Plaintiff and Ms. Lisa Proszek, an attorney in practice in Tulsa, Oklahoma, jointly authored a text entitled *"Social Security Disability and the Legal*

*Professional"* (hereinafter, "the text.") The text was published in July 2002 by Delmar Publishers and West Legal Studies. Delmar Publishers is a division of West Legal Studies dedicated to publication of paralegal education materials. West Legal Studies is a division of Thomson Learning, a leading publisher of legal and legal educational materials.

c. In accord with the provisions of the Ethics in Government Act and its implementing regulations, Plaintiff requested permission from SSA:

1) to write and publish said text; and

2) to receive compensation (advances and royalties) for said publication. See, "Exhibit A" hereto.

d. Defendant SSA, through its Chief Administrative Law Judge, Office of Hearings and Appeals, granted permission to write, but denied permission to receive compensation. See, "Exhibit B," hereto.

e. An informal advisory opinion was sought from OGE as to the interpretation of its ethics rules, and particularly the "NOTE" to §2635.807(a), implementing the Ethics in Government Act. OGE narrowly and improperly interpreted its own rules, ignoring the plain meaning of its own interpretative "NOTE," as contained in the rules. A copy of the "NOTE" is attached as "Exhibit C," hereto. A copy of OGE's

informal opinion is attached as "Exhibit D," hereto.

f. Appeal of SSA's denial for compensation was taken to SSA's Deputy General Counsel, Mr. Randolph Gaines, the designated agency ethics official for SSA. Permission to receive compensation was again denied. See, "Exhibit E" hereto.

g. As a result, all administrative remedies have been exhausted.

5. This court has jurisdiction over the controversy in accord with 28 U.S.C. § 1331, to-wit: the United States is a party-defendant to the action and the question to be decided centers about the Ethics in Government Act of 1978 as amended by the Ethics Reform Act of 1989.

II. <u>Complaint for Declaratory Judgment Against Both Defendants</u>

6. Paragraphs (1) through (5) are adopted as if set forth fully herein.

7. Pursuant to 28 U.S.C. §2201 the Plaintiff hereby requests judgment declaring the rules promulgated by OGE found at 5 C.F.R. § 2635.807 to be unconstitutional, being both "under and over inclusive" and violative of the First Amendment to the United States Constitution. The rules, as promulgated by OGE and as interpreted and applied by both Defendants are violative of the First Amendment to the United States Constitution; consistent with the Supreme

Court's holding in _United States et al v. NTEU et al_, *513 U.S. 454 (1995)*; and the holding of the United States Court of Appeals for the District of Columbia in _Sanjour, et al. v. Environmental Protection Agency, et al_, 312 U.S. App. D.C. 121; 56 F.3d 85 (U.S.App. D.C. 1995); together with that of the United States District Court for the District of Columbia in _Sanjour, et al. v. Environmental Protection Agency, et al._, 7 F.Supp.2d 14 (U.S. Dist. D.C. 1998), wherein that court held (as against OGE as well as the EPA) that "the governmental action giving rise to the First Amendment violation was the promulgation and enforcement of 5 C.F.R. §§ 2635.807(a) & 2636.202(b)" and ordered that "defendants are enjoined from enforcing 5 C.F.R. §2635.807(a) . . . against plaintiffs and all federal employees below the senior executive service level of employment." *Id.* at 24.

8. Federal Administrative Law Judges within the Executive Branch are not members of the Senior Executive Service (SES).

III. _Complaint for Relief From Defendant Barnhart's Decision_

9. Paragraphs (1) through (8) are adopted as if set forth fully herein.

10. Plaintiff further asks that the court reverse the decision of the Defendant Jo Anne B. Barnhart denying compensation for publication and sale of the text.

11. In denying compensation for the text, Defendant Barnhart failed to properly interpret and apply the rules as written, and specifically failed to consider and apply the plain meaning of the NOTE to 5 C.F.R. §2635.807(a) which provides that compensation "for teaching, speaking or writing on a subject within the employee's discipline or inherent area of expertise based on his educational background, or experience" may be received "even though the teaching, speaking or writing deals generally with a subject within the agency's areas of responsibility." See, *"Exhibit C," attached hereto.*

12. Plaintiff's actual "inherent expertise," "education," and "experience" qualifies him under this NOTE for exemption from the ban on compensation. First, Plaintiff has taught law through the course of his professional career, teaching at Oral Roberts University (1977-1979); the University of Tulsa College of Law (1980-1984; 1993-1995; 1996-Present and holding appointment as an "adjunct professor of law"); California Western School of Law (1984-1985); and Texas Wesleyan University School of Law (1995). Second, Plaintiff has authored a number of professional articles, appearing in law journals and law reviews since 1980. Third, Plaintiff earned a Master of Laws (LL.M.) *cum laude*, from the University of San Diego, School of Law in 1990, with a concentration in "Litigation and Trial Process." This latter experience (teaching and writing) is

significant as the Chief Judge's initial denial was based on the assertion that Plaintiff was offered the opportunity to write based on his position as an Administrative Law Judge; when, in fact, no factual inquiry had been conducted by the Office of the Chief Administrative Law Judge. Plaintiff's experience as a veteran law teacher with a record of academic scholarship forms a substantive basis for writing; *i.e.*, simply because one is a judge does not vest one with the knowledge, skill and acumen necessary to write in an educationally effective manner.

Fourth, and most significantly, the Plaintiff served a full eight (8) year term as United States Magistrate Judge with the United States District Court for the Northern District of Oklahoma from May 29, 1987 to May 29, 1995, during most of which time he was one of only two magistrate judges so appointed in the Northern District, vested with initial responsibility to hear and decide (either by report and recommendation or judgment) appeals from decisions of Administrative Law Judges with the Social Security Administration. Plaintiff, by virtue of this experience with the Court, was fully conversant with Social Security law and the legal standards applicable to such cases, well before assuming his present appointment. Indeed, at the time of the writing of the book Plaintiff had served more time as a U.S. Magistrate Judge (8 years) than he had as a U.S.

Administrative Law Judge (approximately 4-6 years).

13. Defendant Jo Anne B. Barnhart failed to take into account the Plaintiff's "discipline," "inherent area of expertise," "educational background," or "experience" in denying compensation for the text; asserting instead that "even assuming that the primary reason that you were approached to write the book was because of your prior experiences and background, we still cannot permit you to earn royalties for the book." The rationale for this blanket assertion is that "the fact that you are an ALJ could have an effect on the public's view of your expertise in this subject matter." The explanation is cryptic at best, and evasive at worst, failing to offer any actual explanation under both case and statutory law and the implementing regulations, sufficient to warrant wholesale dismissal of Plaintiff's actual expertise acquired before he was appointed to his current position. See, United States et al v. NTEU et al, *513 U.S. 454 (1995)*, citing, Pickering v. Board of Ed. Of Township High School Dist. 205, 391 U.S. 563, 568.

14. In so doing, Defendant Jo Anne B. Barnhart interpreted the rules in such a manner as to prevent any interpretation that would give life to the explanatory NOTE. The Commissioner erroneously took the position that background and experience notwithstanding, an Administrative Law Judge may not receive

compensation for a writing dealing with Social Security law and practice before the Office of Hearings Appeals, even though, as here, the Administrative Law Judge holds the unique distinction of having first served as a United States Magistrate Judge, having heard Social Security cases on appeal for eight (8) years. This qualification alone singles the Plaintiff out as unique among all other Administrative Law Judges within Social Security's Office of Hearings and Appeals, as to the best of Plaintiff's information and belief, no other former Magistrate Judges sit as federal Administrative Law Judges within Social Security's Office of Hearings and Appeals. Given that Magistrate Judges almost uniformly initially hear and decide Social Security appeals before the federal district courts, the Plaintiff is uniquely qualified under the criteria set forth in the NOTE to 5 C.F.R. §2635.807(a) as possessed of inherent expertise, prior to his appointment to his current position. The Commissioner's position was apparently that no exception can be made to the prohibition against compensation for writing because of the Plaintiff's appointment as an Administrative Law Judge; even though the intent of the rules, as evidenced in the accompanying NOTE indicates that there are circumstances under which the ban on compensation may be lifted. As such, the Commissioner's decision is erroneous and contrary to law and should be reversed.

WHEREFORE, the Plaintiff respectfully asks this Court to

a. Declare the implementing rules of the Ethics in Government Act of 1978, as amended by the Ethics Reform Act of 1989, found at 5 C.F.R. §2635.807 unconstitutional as applied to compensated writing for Administrative Law Judges appointed and serving in the Executive Branch of the federal government; and

b. Reverse Defendant Barnhart's decision to deny compensation to Plaintiff for publication and sale of the text *"Social Security Disability and the Legal Professional."*

c. For such other and further relief, including payment of attorney's fees and costs, as the Court may deem just and appropriate.

Signed,

Jeffrey Scott Wolfe, Plaintiff
O.B.A. Number 9829
Appearing Pro Se

403 West Fairway Court
Broken Arrow, Oklahoma 74011
(918) 809 - 6434

# "EXHIBIT A"

Plaintiff's Original Request for Permission
of the Social Security Administration

# REQUEST FOR APPROVAL OF OUTSIDE ACTIVITY

(Ref. HHS Personnel Guides for Supervisors, Chapter IV, Guide 7, Supplement 1)

☐ Initial Request
☐ Revised Request
☐ Renewal

NOTE TO EMPLOYEE: See Information on Reverse Side of This Form

| | |
|---|---|
| 1. NAME *(Last, First, Initial)*<br>WOLFE, JEFFREY S. | 2. ORGANIZATIONAL LOCATION *(Principal Operating Component, Bureau, Division)*<br>OHA/SSA |
| 3. TITLE OF POSITION<br>Administrative Law Judge | 4. GRADE AND SALARY *(Federal)*<br>AL-03 |
| 5. NAME, ADDRESS AND BUSINESS OF PERSON OR ORGANIZATION FOR WHOM OUTSIDE SERVICES WILL BE PERFORMED<br>Delmar (WEST) Publishing Co. | 6. LOCATION WHERE SERVICES WILL BE PERFORMED<br>Tulsa, Oklahoma |

7. NATURE OF ACTIVITY *(Indicate type of activity, e.g., teaching, consultative services, and give full description of specific duties or services to be performed. Specify, when possible, the scheduled days of week and hours of day proposed activity will be performed.)*

Contract for publication of a text on Social Security Law and Practice. Delmar Publishing is an imprint (or subsidiary) of West Publishing, the leading publishar of law texts in the United States. Work (writing) will be performed outside of normal office hours.

8. ESTIMATED TIME INVOLVED

a. PERIOD COVERED
FROM approximately 12 mos. TO

b. ESTIMATED TOTAL TIME DEVOTED TO ACTIVITY *(If on a continuing basis, give estimated time per year)*
After-hours time only (indeterminate)

c. WILL WORK BE PERFORMED ENTIRELY OUTSIDE USUAL WORKING HOURS?

☐ YES ☒ NO IF NO, INDICATE ESTIMATED NUMBER OF HOURS OR DAYS OF ABSENCE FROM WORK

9. DO YOUR OFFICIAL DUTIES RELATE IN ANY WAY TO THE PROPOSED ACTIVITY?

☒ NO ☐ YES *(Describe)* (only insofar as this is an area of law subject of the academic text)

10. IF PROVIDING CONSULTATIVE OR PROFESSIONAL SERVICES, ARE YOUR WOULD-BE ASSOCIATES RECEIVING OR WILL THEY SEEK, A GRANT OR CONTRACT FROM A FEDERAL AGENCY?

☒ NO ☐ YES *(Describe)*

11. METHOD OR BASIS OF COMPENSATION

☐ FEE ☐ HONORARIUM ☐ PER DIEM ☐ PER ANNUM
☒ ROYALTY ☐ EXPENSES ☐ OTHER *(Specify)*

12. WILL COMPENSATION BE DERIVED FROM A DHEW GRANT OR CONTRACT?

☒ NO ☐ YES *(Describe)*

13. THIS REQUEST IS MADE WITH FULL KNOWLEDGE OF DEPARTMENT AND PRINCIPAL OPERATING COMPONENT POLICY AND PROCEDURES ON OUTSIDE ACTIVITIES. THE STATEMENTS I HAVE MADE ARE TRUE, COMPLETE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

| 14. SIGNATURE OF EMPLOYEE | 15. DATE | *16. ADDITIONAL INFORMATION ATTACHED |
|---|---|---|
| [signature] | 9/22/99 | ☐ YES ☒ NO |

*17. ACTION RECOMMENDED

| a. | b. SIGNATURE | c. TITLE | d. DATE |
|---|---|---|---|
| ☒ APPROVAL<br>☐ DISAPPROVAL | [signature] | Acting [illegible] | 9/22/99 |

18. ACTION TAKEN

| a. | b. SIGNATURE | c. TITLE | d. DATE |
|---|---|---|---|
| ☐ APPROVAL<br>*☐ DISAPPROVAL | | | |

*See reverse of form

HHS-520 (Rev. 8/81)

Office of Hearings and Appeals
Social Security Administration

5110 South Yale Avenue• Suite 204
Tulsa, Oklahoma 74135
(918) 496-6700•Facsimile (918) 496-6725

September 22, 1999

The Honorable Charles Boyer
Chief Administrative Law Judge
One Skyline Tower, 5107 Leesburg Pike
Falls Church, Virginia 22041-3255

***Re: Publication Contract, Delmar (West) Publishing***

Dear Judge Boyer:

I am pleased to report that I have been asked to write a text on Social Security Law and Practice by Delmar Publishing. Delmar is an imprint (subsidiary) of West Publishing; as you know, one of the country's leading publishers of law texts. They indicate that they will publish as soon as the text is completed, so I am eager to begin.

I enclose a copy of the *Request for Approval of Outside Activity* for your review; though I have forwarded the original to Judge Anderson, as required.

From review of the internet site, it appears that at least one senator is raising some question about the efficacy of U.S. Administrative Law Judges with OHA, including the reported observation that 'they' do not know the law. Whether this opportunity to publish is significant or not, I cannot of course say, but at least you can say that one of your judges has been asked to publish a text on the subject.

I was very pleased to see that everything worked out, and otherwise hope this finds you well.

Sincerely,

Jeffrey S. Wolfe

Office of Hearings and Appeals
Social Security Administration

5110 South Yale Avenue, Suite 204
Tulsa, Oklahoma 74135

September 22, 1999

The Honorable JoAnn Anderson
Regional Chief United States
Administrative Law Judge
Office of the Regional Chief Judge
1301 Young Street, Suite 460
Dallas, Texas 75202

*Re: Request for Approval of Outside Activity*

Dear Judge Anderson:

I am pleased to report that I have been asked by Delmar Publishing, an imprint (subsidiary) of West Publishing to write a text on Social Security Law and Practice. West is, as you know, one of the country's leading law text publishers.

I enclose for your review, the *Request for Approval of Outside Activity*. It is an exciting opportunity and I look forward to beginning the task.

I hope this finds you otherwise doing well.

Sincerely,

Jeffrey S. Wolfe

"EXHIBIT B"

Defendant Barnhart's Initial Response
Allowing Writing & Denying Compensation

SOCIAL SECURITY

OFFICE OF HEARINGS AND APPEALS
Office of the Chief Judge
One Skyline Tower, Suite 1500
5107 Leesburg Pike
Falls Church, VA 22041-3255

NOV - 6 1999

MEMORANDUM TO: Jeffrey S. Wolfe
Administrative Law Judge
Tulsa, OK

FROM : Chief Administrative Law Judge

SUBJECT : Outside Activity Request: -- Publish - Social Security Law and Practice

I have reviewed the attached HHS-520 request for approval of this outside activity. According to the Government-Wide Standards of Ethical Conduct for Employees of the Executive Branch, this type of outside activity is not prohibited. You may not, however, accept any compensation for this activity even in the form of royalties. Federal employees are prohibited from receiving compensation from any source other than the Government for teaching, speaking, or writing that relates to official duties. 5 CFR 2635.807(a). Writing relates to an employee's official duties if the circumstances indicate that the invitation was extended primarily because of an employee's official position rather than the employee's expertise on the particular subject matter, or if the subject of the activity deals in significant part with any ongoing or announced policy, program or operation of the Agency. 5 CFR 2635.807(a)(2). Because you are an Administrative Law Judge for Social Security and a text on social Security law and practice deals in significant part on the Agency's policies, programs and operations, you may not accept compensation for this activity.

Therefore, I have partially approved your request provided you satisfy all relevant laws and regulations, including the attached specific conditions. **Please provide a disclaimer for your article. Your disclaimer should read: This article was written in my private capacity. No official support or endorsement by SSA is intended or should be inferred.**

**Be advised, outside activity requests should be submitted to the Regional Chief Judge's office. The**

**Regional Chief Judge will forward form HHS-520 to my office.**

Any violation of the attached conditions, whether intentional or otherwise, will result in the immediate withdrawal of the approved outside activity and may result in administrative disciplinary action.

Should there be a significant change in your outside activity, you must submit a new HHS-520. If you discontinue your outside activity, you should notify the Regional Office.

If you have any questions or would like to discuss this request, please contact Sandra Poole of my staff at (703) 605-8549.

Roger Franklin for

Charles R. Boyer

Attachment
HHS-520

cc: Regional Chief Judge Anderson
Acting Hearing Office Chief Judge Payne

"EXHIBIT "C"

"NOTE" to 5 C.F.R. §2635.807(a)

Source: Legal > Federal Legal - U.S. > **CFR - Code of Federal Regulations - Selected Documents**
TOC: Code of Federal Regulations > /.../ > SUBPART H-- OUTSIDE ACTIVITIES > **§ 2635.807 Teaching, speaking and writing.**
Terms: **compensation and ethics** (Edit Search)

Select for FOCUS™ or Delivery

*5 CFR 2635.807*

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright (c) 2002, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE SEPTEMBER 10, 2002 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 5 -- ADMINISTRATIVE PERSONNEL
CHAPTER XVI -- OFFICE OF GOVERNMENT **ETHICS**
SUBCHAPTER B -- GOVERNMENT **ETHICS**
PART 2635 -- STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH
SUBPART H -- OUTSIDE ACTIVITIES

5 CFR 2635.807

§ 2635.807 Teaching, speaking and writing.

(a) **Compensation** for teaching, speaking or writing. Except as permitted by paragraph (a)(3) of this section, an employee, including a special Government employee, shall not receive **compensation** from any source other than the Government for teaching, speaking or writing that relates to the employee's official duties.

(1) Relationship to other limitations on receipt of **compensation. The compensation** prohibition contained in this section is in addition to any other limitation on receipt of **compensation** set forth in this chapter, including:

(i) The requirement contained in § 2636.307 of this chapter that covered noncareer employees obtain advance authorization before engaging in teaching for **compensation;** and

(ii) The prohibitions and limitations in § 2635.804 and in § 2636.304 of this chapter on receipt of outside earned income applicable to certain Presidential appointees and to other covered noncareer employees.

(2) Definitions. For purposes of this paragraph:

(i) Teaching, speaking or writing relates to the employee's official duties if:

(A) The activity is undertaken as part of the employee's official duties;

(B) The circumstances indicate that the invitation to engage in the activity was extended to the employee primarily because of his official position rather than his expertise on the particular subject matter;

(C) The invitation to engage in the activity or the offer of **compensation** for the activity was

extended to the employee, directly or indirectly, by a person who has interests that may be affected substantially by performance or nonperformance of the employee's official duties;

(D) The information conveyed through the activity draws substantially on ideas or official data that are nonpublic information as defined in § 2635.703(b); or

(E) Except as provided in paragraph (a)(2)(i)(E)(4) of this section, the subject of the activity deals in significant part with:

(1) Any matter to which the employee presently is assigned or to which the employee had been assigned during the previous one-year period;

(2) Any ongoing or announced policy, program or operation of the agency; or

(3) In the case of a noncareer employee as defined in § 2636.303(a) of this chapter, the general subject matter area, industry, or economic sector primarily affected by the programs and operations of his agency.

(4) The restrictions in paragraphs (a)(2)(i)(E) (2) and (3) of this section do not apply to a special Government employee. The restriction in paragraph (a)(2)(i)(E)(1) of this section applies only during the current appointment of a special Government employee; except that if the special Government employee has not served or is not expected to serve for more than 60 days during the first year or any subsequent one year period of that appointment, the restriction applies only to particular matters involving specific parties in which the special Government employee has participated or is participating personally and substantially.

NOTE: Section 2635.807(a)(2)(i)(E) does not preclude an employee, other than a covered noncareer employee, from receiving **compensation** for teaching, speaking or writing on a subject within the employee's discipline or inherent area of expertise based on his educational background or experience even though the teaching, speaking or writing deals generally with a subject within the agency's areas of responsibility.

Example 1: The Director of the Division of Enforcement at the Commodity Futures Trading Commission has a keen interest in stamp collecting and has spent years developing his own collection as well as studying the field generally. He is asked by an international society of philatelists to give a series of four lectures on how to assess the value of American stamps. Because the subject does not relate to his official duties, the Director may accept **compensation** for the lecture series. He could not, however, accept a similar invitation from a commodities broker.

Example 2: A scientist at the National Institutes of Health, whose principal area of Government research is the molecular basis of the development of cancer, could not be compensated for writing a book which focuses specifically on the research she conducts in her position at NIH, and thus, relates to her official duties. However, the scientist could receive **compensation** for writing or editing a textbook on the treatment of all cancers, provided that the book does not focus on recent research at NIH, but rather conveys scientific knowledge gleaned from the scientific community as a whole. The book might include a chapter, among many other chapters, which discusses the molecular basis of cancer development. Additionally, the book could contain brief discussions of recent developments in cancer treatment, even though some of those developments are derived from NIH research, as long as it is available to the public.

Example 3: On his own time, a National Highway Traffic Safety Administration employee prepared a consumer's guide to purchasing a safe automobile that focuses on automobile crash worthiness statistics gathered and made public by NHTSA. He may not receive royalties

or any other form of **compensation** for the guide. The guide deals in significant part with the programs or operations of NHTSA and, therefore, relates to the employee's official duties. On the other hand, the employee could receive royalties from the sale of a consumer's guide to values in used automobiles even though it contains a brief, incidental discussion of automobile safety standards developed by NHTSA.

Example 4: An employee of the Securities and Exchange Commission may not receive **compensation** for a book which focuses specifically on the regulation of the securities industry in the United States, since that subject concerns the regulatory programs or operations of the SEC. The employee may, however, write a book about the advantages of investing in various types of securities as long as the book contains only an incidental discussion of any program or operation of the SEC.

Example 5: An employee of the Department of Commerce who works in the Department's employee relations office is an acknowledged expert in the field of Federal employee labor relations, and participates in Department negotiations with employee unions. The employee may receive **compensation** from a private training institute for a series of lectures which describe the decisions of the Federal Labor Relations Authority concerning unfair labor practices, provided that her lectures do not contain any significant discussion of labor relations cases handled at the Department of Commerce, or the Department's labor relations policies. Federal Labor Relations Authority decisions concerning Federal employee unfair labor practices are not a specific program or operation of the Department of Commerce and thus do not relate to the employee's official duties. However, an employee of the FLRA could not give the same presentations for **compensation.**

Example 6: A program analyst employed at the Environmental Protection Agency may receive royalties and other **compensation** for a book about the history of the environmental movement in the United States even though it contains brief references to the creation and responsibilities of the EPA. A covered noncareer employee of the EPA, however, could not receive **compensation** for writing the same book because it deals with the general subject matter area affected by EPA programs and operations. Neither employee could receive **compensation** for writing a book that focuses on specific EPA regulations or otherwise on its programs and operations.

Example 7: An attorney in private practice has been given a one year appointment as a special Government employee to serve on an advisory committee convened for the purpose of surveying and recommending modification of procurement regulations that deter small businesses from competing for Government contracts. Because his service under that appointment is not expected to exceed 60 days, the attorney may accept **compensation** for an article about the anticompetitive effects of certain regulatory certification requirements even though those regulations are being reviewed by the advisory committee. The regulations which are the focus of the advisory committee deliberations are not a particular matter involving specific parties. Because the information is nonpublic, he could not, however, accept **compensation** for an article which recounts advisory committee deliberations that took place in a meeting closed to the public in order to discuss proprietary information provided by a small business.

Example 8: A biologist who is an expert in marine life is employed for more than 60 days in a year as a special Government employee by the National Science Foundation to assist in developing a program of grants by the Foundation for the study of coral reefs. The biologist may continue to receive **compensation** for speaking, teaching and writing about marine life generally and coral reefs specifically. However, during the term of her appointment as a special Government employee, she may not receive **compensation** for an article about the NSF program she is participating in developing. Only the latter would concern a matter to which the special Government employee is assigned.

Example 9: An expert on international banking transactions has been given a one-year appointment as a special Government employee to assist in analyzing evidence in the Government's fraud prosecution of owners of a failed savings and loan association. It is anticipated that she will serve fewer than 60 days under that appointment. Nevertheless, during her appointment, the expert may not accept **compensation** for an article about the fraud prosecution, even though the article does not reveal nonpublic information. The prosecution is a particular matter that involves specific parties.

(ii) Agency has the meaning set forth in § 2635.102(a), except that any component of a department designated as a separate agency under § 2635.203(a) shall be considered a separate agency.

(iii) **Compensation** includes any form of consideration, remuneration or income, including royalties, given for or in connection with the employee's teaching, speaking or writing activities. Unless accepted under specific statutory authority, such as 31 U.S.C. 1353, 5 U.S.C. 4111 or 7342, or an agency gift acceptance statute, it includes transportation, lodgings and meals, whether provided in kind, by purchase of a ticket, by payment in advance or by reimbursement after the expense has been incurred. It does not include:

(A) Items offered by any source that could be accepted from a prohibited source under subpart B of this part;

(B) Meals or other incidents of attendance such as waiver of attendance fees or course materials furnished as part of the event at which the teaching or speaking takes place;

(C) Copies of books or of publications containing articles, reprints of articles, tapes of speeches, and similar items that provide a record of the teaching, speaking or writing activity; or

(D) In the case of an employee other than a covered noncareer employee as defined in 5 CFR 2636.303(a), travel expenses, consisting of transportation, lodgings or meals, incurred in connection with the teaching, speaking or writing activity.

Note to Paragraph (a)(2)(iii): Independent of § 2635.807(a), other authorities, such as 18 U.S.C. 209, in some circumstances may limit or entirely preclude an employee's acceptance of travel expenses. In addition, employees who file financial disclosure reports should be aware that, subject to applicable thresholds and exclusions, travel and travel reimbursements accepted from sources other than the United States Government must be reported on their financial disclosure reports.

Example 1 to paragraph (a)(2)(iii): A GS-15 employee of the Forest Service has developed and marketed, in her private capacity, a speed reading technique for which popular demand is growing. She is invited to speak about the technique by a representative of an organization that will be substantially affected by a regulation on land management which the employee is in the process of drafting for the Forest Service. The representative offers to pay the employee a $ 200 speaker's fee and to reimburse all her travel expenses. She may accept the travel reimbursements, but not the speaker's fee. The speaking activity is related to her official duties under § 2635.807(a)(2)(i)(C) and the fee is prohibited **compensation** for such speech; travel expenses incurred in connection with the speaking engagement, on the other hand, are not prohibited **compensation** for a GS-15 employee.

Example 2 to paragraph (a)(2)(iii): Solely because of her recent appointment to a Cabinet-level position, a Government official is invited by the Chief Executive Officer of a major international corporation to attend firm meetings to be held in Aspen for the purpose of

addressing senior corporate managers on the importance of recreational activities to a balanced lifestyle. The firm offers to reimburse the official's travel expenses. The official may not accept the offer. The speaking activity is related to official duties under § 2635.807(a)(2)(i)(B) and, because she is a covered noncareer employee as defined in § 2636.303(a) of this chapter, the travel expenses are prohibited **compensation** as to her.

Example 3 to paragraph (a)(2)(iii): A GS-14 attorney at the Federal Trade Commission (FTC) who played a lead role in a recently concluded merger case is invited to speak about the case, in his private capacity, at a conference in New York. The attorney has no public speaking responsibilities on behalf of the FTC apart from the judicial and administrative proceedings to which he is assigned. The sponsors of the conference offer to reimburse the attorney for expenses incurred in connection with his travel to New York. They also offer him, as **compensation** for his time and effort, a free trip to San Francisco. The attorney may accept the travel expenses to New York, but not the expenses to San Francisco. The lecture relates to his official duties under paragraphs (a)(2)(i)(E)(1) and (a)(2)(i)(E)(2) of § 2635.807, but because he is not a covered noncareer employee as defined in § 2636.303(a) of this chapter, the expenses associated with his travel to New York are not a prohibited form of **compensation** as to him. The travel expenses to San Francisco, on the other hand, not incurred in connection with the speaking activity, are a prohibited form of **compensation.** If the attorney were a covered noncareer employee he would be barred from accepting the travel expenses to New York as well as the travel expenses to San Francisco.

Example 4 to paragraph (a)(2)(iii): An advocacy group dedicated to improving treatments for severe pain asks the National Institutes of Health (NIH) to provide a conference speaker who can discuss recent advances in the agency's research on pain. The group also offers to pay the employee's travel expenses to attend the conference. After performing the required conflict of interest analysis, NIH authorizes acceptance of the travel expenses under 31 U.S.C. 1353 and the implementing General Services Administration regulation, as codified under 41 CFR chapter 304, and authorizes an employee to undertake the travel. At the conference the advocacy group, as agreed, pays the employee's hotel bill and provides several of his meals. Subsequently the group reimburses the agency for the cost of the employee's airfare and some additional meals. All of the payments by the advocacy group are permissible. Since the employee is speaking officially and the expense payments are accepted under 31 U.S.C. 1353, they are not prohibited **compensation** under § 2635.807(a)(2)(iii). The same result would obtain with respect to expense payments made by non-Government sources properly authorized under an agency gift acceptance statute, the Government Employees Training Act, 5 U.S.C. 4111, or the foreign gifts law, 5 U.S.C. 7342.

(iv) Receive means that there is actual or constructive receipt of the **compensation** by the employee so that the employee has the right to exercise dominion and control over the **compensation** and to direct its subsequent use. **Compensation** received by an employee includes **compensation** which is:

(A) Paid to another person, including a charitable organization, on the basis of designation, recommendation or other specification by the employee; or

(B) Paid with the employee's knowledge and acquiescence to his parent, sibling, spouse, child, or dependent relative.

(v) Particular matter involving specific parties has the meaning set forth in § 2637.102(a)(7) of this chapter.

(vi) Personal and substantial participation has the meaning set forth in § 2635.402(b)(4).

(3) Exception for teaching certain courses. Notwithstanding that the activity would relate to

his official duties under paragraphs (a)(2)(i) (B) or (E) of this section, an employee may accept **compensation** for teaching a course requiring multiple presentations by the employee if the course is offered as part of:

(i) The regularly established curriculum of:

(A) An institution of higher education as defined at 20 U.S.C. 1141(a);

(B) An elementary school as defined at 20 U.S.C. 2891(8); or

(C) A secondary school as defined at 20 U.S.C. 2891(21); or

(ii) A program of education or training sponsored and funded by the Federal Government or by a State or local government which is not offered by an entity described in paragraph (a)(3)(i) of this section.

Example 1: An employee of the Cost Accounting Standards Board who teaches an advanced accounting course as part of the regular business school curriculum of an accredited university may receive **compensation** for teaching the course even though a substantial portion of the course deals with cost accounting principles applicable to contracts with the Government.

Example 2: An attorney employed by the Equal Employment Opportunity Commission may accept **compensation** for teaching a course at a state college on the subject of Federal employment discrimination law. The attorney could not accept **compensation** for teaching the same seminar as part of a continuing education program sponsored by her bar association because the subject of the course is focused on the operations or programs of the EEOC and the sponsor of the course is not an accredited educational institution.

Example 3: An employee of the National Endowment for the Humanities is invited by a private university to teach a course that is a survey of Government policies in support of artists, poets and writers. As part of his official duties, the employee administers a grant that the university has received from the NEH. The employee may not accept **compensation** for teaching the course because the university has interests that may be substantially affected by the performance or nonperformance of the employee's duties. Likewise, an employee may not receive **compensation** for any teaching that is undertaken as part of his official duties or that involves the use of nonpublic information.

(b) Reference to official position. An employee who is engaged in teaching, speaking or writing as outside employment or as an outside activity shall not use or permit the use of his official title or position to identify him in connection with his teaching, speaking or writing activity or to promote any book, seminar, course, program or similar undertaking, except that:

(1) An employee may include or permit the inclusion of his title or position as one of several biographical details when such information is given to identify him in connection with his teaching, speaking or writing, provided that his title or position is given no more prominence than other significant biographical details;

(2) An employee may use, or permit the use of, his title or position in connection with an article published in a scientific or professional journal, provided that the title or position is accompanied by a reasonably prominent disclaimer satisfactory to the agency stating that the views expressed in the article do not necessarily represent the views of the agency or the United States; and

(3) An employee who is ordinarily addressed using a general term of address, such as "The Honorable," or a rank, such as a military or ambassadorial rank, may use or permit the use of that term of address or rank in connection with his teaching, speaking or writing.

Note: Some agencies may have policies requiring advance agency review, clearance, or approval of certain speeches, books, articles or similar products to determine whether the product contains an appropriate disclaimer, discloses nonpublic information, or otherwise complies with this section.

Example 1: A meteorologist employed with the National Oceanic and Atmospheric Administration is asked by a local university to teach a graduate course on hurricanes. The university may include the meteorologist's Government title and position together with other information about his education and previous employment in course materials setting forth biographical data on all teachers involved in the graduate program. However, his title or position may not be used to promote the course, for example, by featuring the meteorologist's Government title, Senior Meteorologist, NOAA, in bold type under his name. In contrast, his title may be used in this manner when the meteorologist is authorized by NOAA to speak in his official capacity.

Example 2: A doctor just employed by the Centers for Disease Control has written a paper based on his earlier independent research into cell structures. Incident to the paper's publication in the Journal of the American Medical Association, the doctor may be given credit for the paper, as Dr. M. Wellbeing, Associate Director, Centers for Disease Control, provided that the article also contains a disclaimer, concurred in by the CDC, indicating that the paper is the result of the doctor's independent research and does not represent the findings of the CDC.

Example 3: An employee of the Federal Deposit Insurance Corporation has been asked to give a speech in his private capacity, without **compensation,** to the annual meeting of a committee of the American Bankers Association on the need for banking reform. The employee may be described in his introduction at the meeting as an employee of the Federal Deposit Insurance Corporation provided that other pertinent biographical details are mentioned as well.

**HISTORY:**
[57 FR 35041, Aug. 7, 1992; 57 FR 48557, Oct. 27, 1992; 62 FR 48746, 48748, Sept. 17, 1997; 65 FR 53650, 53652, Sept. 5, 2000, as corrected at 65 FR 55076, Sept. 12, 2000; 66 FR 59673, 59674, Nov. 30, 2001]

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
5 U.S.C. 7301, 7351, 7353; 5 U.S.C. App. (**Ethics** in Government Act of 1978); E.O. 12674, 54 FR 15159, 3 CFR, 1989 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547, 3 CFR, 1990 Comp., p. 306.

**NOTES:**
[EFFECTIVE DATE NOTE: 65 FR 53650, 53652, Sept. 5, 2000, amended this section, effective Sept. 5, 2000; 66 FR 59673, 59674, Nov. 30, 2001. amended this section, effective Dec. 31, 2001.]
NOTES APPLICABLE TO ENTIRE TITLE:
Title 5 of the United States Code was revised and enacted into positive law by Public Law 89-554, Sept. 6, 1966. New citations for obsolete references to sections of 5 U.S.C. appearing in this title may be found in a redesignation table under title 5, Government Organization and Employees, United States Code.

"EXHIBIT "D"

OGE's Informal Advisory Opinion

United States
**Office of Government Ethics**
1201 New York Avenue, NW., Suite 500
Washington, DC 20005-3917

November 13, 2001

Jeffrey S. Wolfe
Administrative Law Judge
7331 South 74th East Avenue
Tulsa, OK 74133

Dear Judge Wolfe:

You have requested our advice as to the applicability of 5 C.F.R. § 2635.807 to a proposed book on the Social Security disability adjudicatory system. You are currently a Social Security Administration (SSA) Administrative Law Judge (ALJ) in the Office of Hearings and Appeals (OHA). OHA is responsible for holding hearings and issuing decisions that determine whether or not a person may receive benefits. The bulk of OHA's work is comprised of cases involving disability and cases involving Supplemental Security Income. As an ALJ, your duties include the conduct of de novo hearings and decisions on appealed SSA determinations, presumably including disability cases.

You initially sought advice on this question from your Headquarters, which concluded that under section 2635.807, you may not receive compensation for the proposed work. In reaching this conclusion, SSA reasoned that the work will necessarily focus on the policies, programs, and operations of the agency. For the reasons explained below, we agree with that conclusion.

Analysis

The Standards of Ethical Conduct for Executive Branch Employees (Standards) prohibit an employee of any agency from receiving compensation for teaching, speaking, or writing that "relates to the employee's official duties." 5 C.F.R. § 2635.807(a). The most pertinent subsection of the regulation provides that a writing will be considered related to official duties if the subject matter "deals in significant part with . . . '[a]ny ongoing or announced policy, program or operation of the agency.'" 5 C.F.R. § 2635.807(a)(2)(i)(E).

You believe the issue here is whether the work will deal generally with your professional expertise, which is permitted

notwithstanding its connection with SSA programs, or whether it is instead a focused discussion of SSA programs, which is prohibited. In addressing this issue, you have focused on the note to section 2635.807. That note states:

> Section 2635.807(a)(2)(i)(E) does not preclude an employee, other than a covered noncareer employee, from receiving compensation for teaching, speaking or writing on a subject within the employee's discipline or inherent area of expertise based on his educational background or experience even though the teaching, speaking or writing deals generally with a subject within the agency's areas of responsibility.

It has been the long-held view of this Office that an employee may receive compensation for writings that discuss a general area of expertise. In the preamble that accompanied the publication of the Standards as a final rule, we illustrated this principle by means of an example in which we stated that it is permissible for a National Aeronautics and Space Administration (NASA) engineer to receive compensation for a book on aeronautics, but not for a book on the space shuttle. 57 Fed. Reg. 35,036 (1992). We recognize that, in some sense, the proposed subject matter in this case is the professional expertise of an ALJ who presides over disability cases. However, we do not believe that the proposed topic is sufficiently general to be analogous to an aeronautics text. A general discussion of aeronautics does not inherently implicate NASA programs. The NASA engineer's book need not refer to any program in which NASA was involved, and the primary use of the book will not be to assist the reader's anticipated involvement in future programs in which NASA will be involved. In contrast, SSA was created by the Social Security Act[1] for the express purpose of administering the Act, including disability claims.[2] An individual seeking review of an SSA adverse reconsideration determination must file an appeal with OHA within 60 days of receipt of notice of the determination.[3] The disability adjudicatory process thus inherently involves OHA, and your proposed writing will deal

---

[1] 42 U.S.C. § 901(a).

[2] 42 U.S.C. § 901(b).

[3] 20 C.F.R. § 404.923. C.f., expedited appeals directly to Federal court, 20 C.F.R. § 404.924 (constitutional issues only).

directly with a highly specific subject matter that OHA is integral to. It will be, in effect, a manual for handling cases in which SSA components, and more specifically OHA, will necessarily be involved.

Not only is the subject matter integral to the agency's mission, it is integral to the job of an SSA ALJ. Your role is defined by the disability adjudicatory process, and is to apply the rules that will be the focus of the book. Most, if indeed not all, of the content of the work will be explicit SSA policy. Thus, it appears that, rather than a general topic of professional expertise, the proposed work will necessarily involve close examination of specific policies, programs, and operations of the SSA.

We believe that Example 5 of section 2635.807(a)(2) is more relevant to your situation than the note you have cited. That example states that a labor relations specialist of the Department of Commerce (Commerce) may accept compensation for a series of lectures on Federal Labor Relations Authority (FLRA) decisions, as long as she does not discuss Commerce cases or policies. The Commerce employee may present the lectures, because the decisions are issued by FLRA, not Commerce, and because they do not otherwise deal with the policies, programs or operations of Commerce. If her lectures dealt with labor relations cases handled by Commerce or it's labor relations policies, she would be subject to the compensation ban. The example goes on to note that an FLRA employee may not present the lecture series because it would deal with decisions issued by his employing agency. Since your proposed work is devoted entirely to a discussion of an SSA program, it would appear to be analogous to the situation faced by the FLRA employee in the above example, rather than the Commerce employee.[4]

You have also argued that your personal history of publication needs to be considered in assessing your personal circumstances and qualifications as part of the section 2635.807 analysis. However, that is not relevant. A work that, on its face, would not comply with the rule cannot be made compliant by the mere fact that you have published similar articles in the past. Compensation for some of your past works appears to have been permissible. For example,

[4] Also relevant is Example 2 to section 2635.807(a)(3), which prohibits an Equal Employment Opportunity Commission employee from receiving compensation for a continuing legal education course on employment discrimination law, although the example is intended as an illustration of a different point.

a discussion of effective courtroom layout does not appear, from the title, to have an inherent focus on SSA programs. On the other hand, your past writings on SSA practice and procedures do not appear to be works for which you could have received compensation, and whether you did so or not, certainly would not provide justification for your doing so in the future.

We believe that our conclusion is in harmony with the note you have cited, as well as the underlying principle. Put simply, the note does not apply because, rather than being a general discussion of your professional expertise, the proposed work focuses specifically on a core mission of SSA.

Conclusion

In light of these considerations, we believe that the proposed book "deals in significant part with . . . [an] ongoing or announced policy, program, or operation of the agency," and thus you are barred from receipt of compensation for writing it.

Sincerely,

Marilyn L. Glynn

Marilyn L. Glynn
General Counsel

"EXHIBIT "E"

Final Decision of Randolf Gaines, Designated Ethics Official for the Social Security Administration

SOCIAL SECURITY
Office of the General Counsel
July 29, 2002

Jeffrey S. Wolfe
403 West Fairway Court
Broken Arrow, Oklahoma 74011

Dear Judge Wolfe:

You have requested that we reconsider the Agency's decision to deny you permission to receive compensation in the form of royalties as a result of publication of a book that you co-authored, Social Security Disability and the Legal Professional. Without going into the entire history of your request, that you thoroughly state in your request and the materials attached to your request, let me note a few points. The Office of Hearings and Appeals (OHA) granted you permission to write and publish the book, but it did not permit you to receive compensation in the form of royalties. See the enclosed Memorandum from the former Chief Administrative Law Judge, Charles R. Boyer, dated November 6, 1999. Subsequently, you requested advice from the Office of Government Ethics (OGE). Marilyn L. Glynn, General Counsel of OGE concluded that "the proposed book 'deals in significant part with . . . [an] ongoing or announced policy, program, or operation of the agency,' and thus you are barred from receipt of compensation for writing it." A copy of the November 13, 2001 letter is enclosed. After reviewing your additional materials and arguments, we concur with OHA and support OGE's interpretation of its regulations that you are permitted to write and publish the book, but you are not permitted to receive compensation for the book.

You have narrowed the basis of your current argument primarily to a NOTE to 5 CFR § 2635.807. You believe that you are entitled to receive compensation for your book because you were requested to write the book, not as a result of your current position as an Administrative Law Judge (ALJ) for the Social Security Administration (SSA), but because of your unique background and experience. You point out that prior to your appointment as an ALJ, you served a full term as a United States Magistrate Judge. As a result of your prior service in the judicial branch, you had an expertise in Social Security disability law and appeals that predates your appointment as an ALJ. In further support of your position, we received a letter from Joan M. Gill, the Senior Acquisition Editor at Delmar Learning, who stated that you were not approached to write the textbook because of your current position as an ALJ, but as a result of your "excellent lecture reviews," your relationship with the National Association of Legal Assistants, and "at the urging of a highly respected paralegal author." Enclosed is the June 4, 2002 Letter that we received from Ms. Gill.

Unfortunately, even assuming that the primary reason that you were approached to write the book was because of your prior experiences and background, we still cannot permit you to earn

royalties for the book.[1] The Standards of Ethical Conduct for Employees of the Executive Branch prohibit an employee of any agency from receiving compensation for teaching, speaking, or writing that "relates to the employee's official duties." 5 C.F.R. § 2635.807(a). The most pertinent subsection of the regulation provides that a writing will be considered related to official duties if the subject matter deals in significant part with "[a]ny ongoing or announced policy, program or operation of the agency." 5 C.F.R. § 2635.807(a)(2)(i)(E). The note that you focused your argument on states:

> Section 2635.807(a)(2)(i)(E) does not preclude an employee, other than a covered noncareer employee, from receiving compensation for teaching, speaking or writing on a subject within the employee's discipline or inherent area of expertise based on his educational background or experience even though the teaching, speaking or writing deals generally with a subject within the agency's areas of responsibility.

In Ms. Glynn's letter to you, she stated that it has been the long-held view of OGE that an employee may receive compensation for writings that discuss a general area of expertise. However, your proposed writing does not discuss a general area of expertise, but deals in significant part with SSA's ongoing policy, programs or operation.[2] Thus, OGE concluded that the note you cite does not apply in your case because, "rather than being a general discussion of

---

[1] Although the reason for your offer to write the book may not have been due to the fact that you are an SSA ALJ, the fact that you are an ALJ could have an effect on the public's view of your expertise in this subject matter.

[2] OGE stated that Example 5 of section 2635.807(a)(2) is more relevant to your situation than the note you have cited. That example states that a labor relations specialist of the Department of Commerce may accept compensation for a series of lectures on Federal Labor Relations Authority (FLRA) decisions, as long as she does not discuss Department of Commerce cases or policies. The Commerce Department employee may present the lectures, because the decisions are issued by FLRA, not Commerce, *and* because they do not otherwise deal with the policies, programs or operations of Commerce. If her lectures dealt with labor relations cases handled by the Commerce Department or that Department's labor relations policies, she would be subject to the compensation ban. The example goes on to note that an FLRA employee may not present the lecture series because it would deal with decisions issued by his employing agency. Since your proposed work is devoted entirely to a discussion of an SSA program, it would appear to be analogous to the situation faced by the FLRA employee in the above example, rather than the Commerce employee.

Also relevant is Example 2 to section 2635.807(a)(3), which prohibits an Equal Employment Opportunity Commission employee from receiving compensation for a continuing legal education course on employment discrimination law, although the example is intended as an illustration of a different point.

your professional expertise, the proposed work focuses specifically on a core mission of SSA."[3] We concur with OGE's interpretation and find no basis to change the decision by OHA that you are permitted to publish the book, but are not permitted to receive compensation in the form of royalties.

If you have any questions feel free to call me at 410-965-3135, or you may call Stuart Besser of my staff at 410-965-3194.

Sincerely,

Randolph W. Gaines
Designated Agency Ethics Official

---

[3] As OGE noted, your proposed writing would deal directly with a highly specific subject matter integral to SSA. It will be, in effect, a manual for handling cases in which SSA will necessarily be involved. Not only is the subject matter integral to the agency's mission, it is integral to the job of an SSA ALJ. Your role is defined by the disability adjudicatory process, and is to apply the rules that will be the focus of the book. Most, if not all, of the content of the work will be explicit SSA policy. Thus, it appears that, rather than a general topic of professional expertise the proposed work will necessarily involve close examination of specific policies, programs, and operations of the SSA.